IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

THOMAS M. FERREE,

                          Plaintiff,

      v.                                              1:05-cv-2266-WSD

LIFE INSURANCE COMPANY OF
NORTH AMERICA, ("LINA");
CIGNA; ADC
TELECOMMUNICATIONS, INC.
LONG TERM DISABILITY PLAN;
ADC TELECOMMUNICATIONS,
INC; RECOVERY SERVICES
INTERNATIONAL, INC.; AND
ADVANTAGE 2000
CONSULTANTS

                          Defendant

<u>OPINION AND ORDER</u>

      This matter is before the Court on Defendant Life Insurance Company of

America's ("LINA") Motion to Dismiss ("LINA Mot. to Dismiss") [19], LINA's

Motion to Dismiss Amended Complaint ("LINA Mot. to Dismiss Am. Compl.")

[39], Defendant Recovery Services International, Inc.'s ("RSI") Motion to Dismiss

Amended Complaint ("RSI Mot. to Dismiss") [40], and Defendant CIGNA's

Motion to Dismiss ("CIGNA Mot. to Dismiss") [41].[1]

## I.     FACTUAL BACKGROUND

This case arises primarily out of a denial of Plaintiff Thomas Ferree's

("Plaintiff") claim for disability benefits under the terms of an employee welfare

benefit plan sponsored by his former employer, Defendant ADC

Telecommunications, Inc. ("ADC").  Plaintiff applied for disability benefits under

the ADC Long Term Disability Plan ("the Plan") alleging disability based on

complications from Idiopathic Pulmonary Fibrosis ("IPF").  Plaintiff submitted the

necessary documentation to LINA, the insuring entity responsible for the payment

of benefits under the ADC Long Term Disability Plan. (Compl., at ¶ 11.)  From

November 4, 2001 to June 10, 2003, Plaintiff received benefits for disability under

the policy.  On June 10, 2003, LINA terminated Plaintiff's Long Term Disability

entitlement under the Plan.  Plaintiff claims that this was done despite an

undisputed diagnosis, his continued physical restrictions and limitations, and the

fact that there was no change in the applicable definition of disability.  (Compl., at

_____

[1]  Plaintiff moved for leave to file a Sur-Reply Memorandum in Opposition
to LINA's Motion to Dismiss [44].  Sur-Reply are not anticipated by the Court's
local rules, but because the Motion is unopposed, it is GRANTED.

¶ 14.)  Plaintiff further claims that in December 2003, he requested the complete

contents of his claim file and all relevant documents.  (Id. at ¶ 280.)  Plaintiff

alleges that CIGNA, LINA's parent company, certified that the documents it sent

in response to Plaintiff's request were all those maintained in Plaintiff's original

claims file.  Plaintiff claims that in providing only the claims file documents, LINA

and CIGNA failed to supply all of the documents which the Employee Retirement

Income Security Act ("ERISA") requires be provided to him.  Accordingly, in

December 2004, Plaintiff requested to be provided "all relevant documents," which

he defined as including, but not limited to:

> medical records in your file, including any and all reports
> of your consultants and reviewers, and any and all
> communications to or from your claims handlers,
> consultants, reviewers, medical experts, or vocational
> experts . . . and any information obtained through any
> reinsurer on your policy.

(Id. at ¶ 284.)  Plaintiff also requested:

> all policies, procedures and guidelines pertaining to the
> handling, evaluation and approval or denial of disability
> claims including CIGNA/LINA's claim manuals,
> guidelines, procedure bulletins, policies or the like and
> any other written material including internal or external
> memorandums that were directly or indirectly utilized in
> the evaluation of this claim or in the training or

> instruction of those employees, consultants or reviewers
> on the evaluation of like or similar types of claims.

(Id.)  Plaintiff also claims LINA and CIGNA misled him to believe that the Plan required him to repay $50,581.06 in overpayments, which represents the amount Plaintiff had received from the Social Security Administration ("SSA") in disability income for the disability he claimed under the ERISA Plan.  Plaintiff was advised that the Plan required this amount to be credited against the amount to be paid Plaintiff under the Plan.  Plaintiff alleges that LINA and CIGNA hired RSI to collect this money from him and that the collection of this amount from Plaintiff unlawfully deprived him of his personal property.

On August 30, 2005, Plaintiff filed this action.  In his Complaint, Plaintiff asserts several ERISA causes of action against LINA, CIGNA, and the Long Term Disability ("LTD") Plan[2] alleging the wrongful termination of benefits.  Specifically, Plaintiff sought, pursuant to 29 U.S.C. 1132(a)(1)(B), to recover LTD Plan benefits (Count I), misappropriated Plan benefits in the form of overpayments (Count III), and to enforce rights regarding Plan benefits (Count IV).  Plaintiff also asserted against LINA and CIGNA a claim for a penalty for failure to provide

---

[2]  Plaintiff voluntarily dismissed the LTD Plan as a defendant on November 16, 2005.  (Consent Order [42].)

documents (Count V) and a claim for attorneys' fees under ERISA (Count VI).

Plaintiff also asserted against LINA and CIGNA state law claims of negligent

misrepresentation (Count VIII), conversion (Count IX), punitive damages (Count

X), and trespass (Count XII).  Plaintiff alleged claims against RSI for violation of

the Fair Debt Collections Practices Act ("FDCPA"),[3] negligent misrepresentation,

and trespass.[4]

## II.    DISCUSSION

### A.    Standard on Motion to Dismiss

The law in this Circuit governing motions to dismiss pursuant to Rule

12(b)(6) for failure to state a claim is well settled.  Dismissal of a complaint is

appropriate only when, on the basis of a dispositive issue of law, no construction of

the factual allegations will support the cause of action.  Marshall County Bd. of

_____

[3] Plaintiff voluntarily dismissed his FDCPA claim against RSI on October 24, 2005.  (Voluntary Dismissal of Count VII [27].)

[4] Plaintiff also named ADC, the Plan administrator, as a defendant, seeking to clarify his rights to benefits under the various employee benefit plans.  Plaintiff voluntarily dismissed its claims against ADC on November 4, 2005.  (Clerk's Entry of Voluntary Dismissal [34].)  Plaintiff also asserted claims for negligent misrepresentation and punitive damages against Advantage 2000, the agent for LINA and CIGNA concerning Plaintiff's Social Security Disability claim.  (Compl., at ¶¶ 10, 353, 369.)  Advantage 2000 was dismissed from the case by stipulation on June 13, 2006.  (Clerk's Entry of Dismissal [161].)

Educ. v. Marshall County Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993).

"Although a plaintiff is not held to a very high standard in a motion to dismiss for failure to state a claim, some minimal pleading standard does exist." Wagner v. Daewoo Heavy Indus. Am. Corp., 289 F.3d 1268, 1270 (11th Cir.), *rev'd on other grounds*, 314 F.3d 541 (11th Cir. 2002) (en banc). "To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions; they are required to allege some specific factual bases for those conclusions or face dismissal of their claims." Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1263 (11th Cir. 2004) ("[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal.") (citations omitted). Applying these principles, the Court will address Defendants' arguments in favor of dismissal.

B.   Defendant LINA's Motion to Dismiss

Defendant LINA moves to dismiss Plaintiff's (I) ERISA claim for a penalty for failure to provide documents under ERISA and (ii) all state law claims for negligent misrepresentation, conversion, and punitive damages as alleged in the original Complaint. LINA also moves to dismiss the trespass claim against it alleged in Plaintiff's Amended Complaint.

1.    _Penalty for Failure to Provide Documents under ERISA (Count V)_

Plaintiff alleges LINA failed to provide him with certain documents required to be provided under ERISA.  Plaintiff identifies five categories of documents he claims LINA neglected to timely include when it sent Plaintiff his claims file:

a.)    Documents demonstrating compliance with the administrative process or safeguards ensuring consistent application of plan provisions;

b.)    Documents that constitute a statement of policy or guidance with respect to the plan;

c.)    Reports of consultants and reviewers;

d.)    Communications to and from claims handlers, consultants, reviewers, medical experts, and vocational experts; and

e.)    Reports from Advantage 2000, Intracorp., and the Smith Group.

(Pl. Sur-Reply to LINA Mot. to Dismiss [44], at 2; Compl., at ¶ 286.)  Plaintiff further claims LINA continues to withhold Smith Group audit documents, including the review of Plaintiff's claim, all RSI documents, and a peer review report LINA relied upon to uphold the termination of Plaintiff's claim.  (Pl. Sur-Reply to LINA Mot. to Dismiss, at 3.; Compl. at ¶¶ 287-91.)

LINA moves to dismiss Count V for failure to state a claim, arguing that the documents about which Plaintiff complains are not properly the subject of the penalty provision.[5]  LINA argues that the documents upon which Plaintiff bases his claim for a penalty are claims-related documents and procedural manuals, the production of which is not mandated by 29 U.S.C. § 1024.  Plaintiff argues that Section 1024's requirement to produce "other instruments under which the plan is established or operated" requires the production to a claimant of materials such as internal procedures, rules, guidelines, and protocols.  Plaintiff basically argues that LINA was required to produce virtually every document relating to the Plan and the decision made under it, and by neglecting to do so, LINA is held strictly liable for statutory penalties under the statute.  The question for this Court is what constitutes "other instruments under which the plan is established or operated."

ERISA section 1024 states that "[t]he administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated

---

[5]  LINA does not waive the defense that the penalty provision is applicable only to administrators named by the plan or by operation of law.  LINA acknowledges in its Motion to Dismiss that courts have held the allegation that an entity is liable for the penalty as a *de facto* administrator of the plan survives a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  (LINA Mot. to Dismiss, at 7 n.1.) (citing Brucks v. The Coca-Cola Co., 391 F. Supp. 2d 1193 (N.D. Ga. 2005); Cheal v. Life Ins. Co. of N. Am., 330 F. Supp. 2d 1347 (N.D. Ga. 2004)).

summary plan description, and the latest annual report, any terminal report, the

bargaining agreement, trust agreement, contract, or other instruments under which

the plan is established or operated."  29 U.S.C. § 1024(b)(4).  ERISA section

1132(c) provides for the enforcement of this requirement:

> Any administrator . . . who fails or refuses to comply
> with a request for any information *which such*
> *administrator is required by this subchapter to furnish to*
> *a participant or beneficiary* (unless such failure or
> refusal results from matters reasonably beyond the
> control of the administrator) by mailing the material
> requested to the last known address of the requesting
> participant or beneficiary within 30 days after such
> request may in the court's discretion be personally liable
> to such participant or beneficiary in the amount of up to
> $100 a day from the date of such failure or refusal, and
> the court may in its discretion order such other relief as it
> deems proper.

29 U.S.C. § 1132(c) (emphasis added).

Plaintiff asserts two arguments in support of its claim for a penalty for

failure to provide documents.  First, Plaintiff argues that 29 U.S.C. § 1024's

requirement that the administrator produce "instruments under which the plan is

established or operated" includes any internal procedures, rules, guidelines, and

protocols.  (Pl. Opp. to LINA Mot. to Dismiss [24], at 9.)  Plaintiff relies on a

single Department of Labor Advisory Opinion[6] and 65 FR 70246-01 n. 24 in

support of this argument.  Although not entirely clear, Plaintiff seems to argue that

if a document is ever used in connection with the adjudication of claims or a

decision on claims for benefits, it is an instrument under which the plan is

"established or operated," and this must be produced.  He relies on the Department

of Labor's position in the cited advisory opinion and regulatory footnote to support

his interpretation.[7]

_____

[6] The Department of Labor opinion states that:

> any document or instrument that specifies procedures,
> formulas, methodologies, or schedules to be applied in
> determining or calculating a participant's . . . benefit
> entitlement under an employee benefit plan would
> constitute an instrument under which the plan is
> established or operated."

(Department of Labor Advisory Opinion 96-14A (July 31, 1996), attached to Pl.
Opp. to LINA Mot. to Dismiss as Ex. 1.)  The Court is unaware of an Eleventh
Circuit opinion addressing the issue of what is specifically required to be produced
pursuant to Section 1024.

[7] While considerable weight should be accorded to an executive
department's construction of a statutory scheme it is entrusted to administer,
Mobile, Ala.-Pensacola, Fla. Bldg. & Const. Trades Council v. Daugherty, 684 F.
Supp. 270, 278 (S.D. Ala 1988), such opinions are neither binding on this Court
nor entitled to blind deference.  Patelco Credit Union v. Sahni, 262 F.3d 897, 908
(9th Cir. 2001); Mack Boring & Parts v. Meeker Sharkey Moffitt, 930 F.2d 267,

Second, Plaintiff argues that LINA is subject to ERISA's penalty provision for failing to produce pertinent documents as required by regulations promulgated under 29 U.S.C. § 1029.  This section states that the Secretary of Labor may "prescribe the format and content of the summary plan description . . . and any other report, statements or documents . . . which are required to be furnished or made available to plan participants and beneficiaries receiving benefits under the plan."  29 U.S.C. § 1029(c).  Plaintiff argues that pursuant to this statute, the Labor Secretary promulgated 29 C.F.R. § 2560.503-1(g), which allowed claimants to review pertinent documents upon receiving a denial of benefits.  (Pl. Opp. to LINA Mot. to Dismiss, at 10.)  This provision has since been amended out of the regulations.  But Plaintiff further argues that when the Department of Labor amended this regulation, it described what documents an administrator must provide for a full and fair review of a claims decision, set out in 29 C.F.R. §

---

277 n.18 (3d Cir. 1991) ("[L]etter opinions apply only to the situation described therein."); Barker v. Pick N Pull Auto Dismantlers, Inc., 819 F. Supp. 889, 896 n.11 (E.D. Cal. 1993) ("Although the advisory opinion properly is consulted, ERISA Procedure 76-1 provides that such an opinion is binding only on the parties to the letter, and that such letters have no precedential effect.").  This principle is particularly compelling when the Department's construction does violence to the statute itself or interprets it in a way that is contrary to the outcome required by the rules of statutory construction.

2560.503-1(h)(2)(iii).  This provision states that a claimant shall be provided

reasonable access to all documents, records, and other information relevant to the

claimant's claim for benefits.  29 C.F.R. § 2560.503-1(h)(2)(iii).[8]  Plaintiff seeks to

tie the requirements of this regulation to the language of the statute by arguing that

because the regulation was promulgated under the authority of § 1029(c),

---

[8] A document is relevant, according to paragraph (m)(8) of the section, if it:

    (I)      was relied upon in making the benefit determination;

    (ii)     was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination;

    (iii)    demonstrates compliance with the administrative processes and safeguards required pursuant to paragraph (b)(5) of this section in making the benefit determination; or

    (iv)    in the case of a group health plan or a plan providing disability benefits, constitutes a statement of policy or guidance with respect to the plan concerning the denied treatment option or benefit for the claimant's diagnosis, without regard to whether such advice or statement was relied upon in making the benefit determination.

29 C.F.R. § 2560.503-1(m)(8).

12

documents required to be produced by the regulation are also subject to the penalty provision.  (Pl. Opp. to LINA Mot. to Dismiss, at 10-12.)

A statutory penalty provision is required to be strictly construed. Commissioner v. Acker, 361 U.S. 87, 91 (1959) (stating that the law is settled that penal statutes are to be construed strictly, and that one is "not to be subjected to a penalty unless the words of the statute plainly impose it"); see also Pleasant-El v. Oil Recovery Co., 148 F.3d 1300, 1303 (11th Cir. 1998).  Section 1132(c) allows a penalty for an administrator's failure or refusal to provide information "which [the] administrator is required by this subchapter to furnish to a participant or beneficiary."  29 U.S.C. § 1132(c).   Section 1024(b)(4) requires that "[t]he administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated."  29 U.S.C. § 1024(b)(4).  Thus, the section's phrase "required by this subchapter" (*i.e.*, ERISA) clearly embraces an administrator's failure or refusal to provide the documents identified in Section 1024, namely "the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining

agreement, trust agreement, contract, or other instruments under which the plan is established or operated."  See 29 U.S.C. § 1024(b)(4).

The Court concludes that "other instruments under which the plan is established or operated" does not include all of the documents that Plaintiff argues may be "relevant" or "pertinent" to a claim.   Any obligation to provide Plaintiff copies of documents "relevant" or "pertinent" to his claim must arise, if at all, outside of the statute.  To the extent claims-related documents are required to be provided, the obligation arises by federal regulation.  See 29 C.F.R. § 2560.503-1(g) (2000).  This regulation does not provide for strict liability for violation of the regulation and does not impose a per-diem fine.

Plaintiff does not cite, nor is the Court aware of, any decision from the Eleventh Circuit Court of Appeals addressing whether a failure to provide documents "pertinent" or "relevant" to a claim for benefits under 29 C.F.R. § 2560.503-1(g) or its current equivalent constitutes a failure to provide information "required by this subchapter" under Section 1132(c).[9]

---

[9]  But see Hamall-Desai v. Fortis Benefits Ins. Co., 370 F. Supp. 2d 1283, 1312-14 (N.D. Ga. 2004) (assessing statutory penalties under Section 1132(c) against an administrator for failure to provide the claimant with certain medical reviewers' opinions and its training and procedural materials, citing these failures as violations of 29 C.F.R. § 2560.503-1(g) (2000)).  The court in Hamall-Desai did

In fact, the First Circuit has characterized this kind of broad reading of Section 1132(c) advocated by the Plaintiff as, at most, "debatable."  Doe v. Travelers Ins. Co., 167 F.3d 53, 60 (1st Cir. 1999).  In Doe, the district court assessed penalties under Section 1132(c) against an administrator for failure to provide its mental health guidelines to the claimant, concluding that the guidelines constituted a "pertinent" document needed for "full and fair review" under 29 C.F.R. § 2560.503-1(g).  Id.  The First Circuit reversed, finding that, even assuming a failure to provide documents under the regulation was actionable under Section 1132(c), the claimant's request for documents could not reasonably be construed as a request for the administrator's guidelines.  Id.  Although the court did not address the precise issue of whether the penalty provision applies to material required solely because of an ERISA regulation, it indicated that the district court's broad reading of Section 1132(c) is not supported by that section's

_____

not expressly address whether a failure to provide "pertinent" documents under ERISA's implementing regulations constituted a failure to provide information "required by this subchapter" authorizing an award under Section 1132(c).  It appears to have relied on the fact that the regulation "was promulgated by the Secretary of Labor pursuant to 29 U.S.C. § 1132."  Hamall-Desai, 370 F. Supp. 2d at 1313 n.34.

15

plain language: "[S]ection 1132(c)(1) speaks of information required 'by' the statute . . . ." Id.

The Court's interpretation here is consistent with the result reached in other circuits. The Seventh Circuit's decision in Ames v. American Nat. Can. Co., 170 F.3d 751 (7th Cir. 1999), is also instructive in the absence of Eleventh Circuit authority on the issue. In Ames, the Court interpreted the "other instrument under which the plan in established or operated" language of section 1132(c) where a claimant argued that the administrator was required, under this provision, to produce a wide variety of documents.[10] In rejecting the Plaintiff's broad interpretation of what was required to be produced, the Court stated:

> The legal question on which this dispute turns is how broadly we should construe the catch-all part of § 1024(b)(4), which requires disclosure of "other instruments under which the plan is established or operated." Other courts of appeals have found that the use of the term "instruments" implies that the statute reaches only formal legal documents governing a plan.

---

[10] The plaintiff in Ames argued the administrator was required to produce documents which "'could reasonably be anticipated to have an impact on the benefits provided, or to be provided, to any plan participant'; the identity and corporate position of the named fiduciaries of the plans; minutes of meetings during which the plans were adopted or amended" and others. Id. at 758. This demand is similar to the documents this Plaintiff argues are subject to the penalty provisions.

16

> See *Faircloth v. Lundy Packing Co.*, 91 F.3d 648, 652-54
> (4th Cir. 1996); *Board of Trustees of the CWA/ITU
> Negotiated Pension Plan v. Weinstein*, 107 F.3d 139,
> 142-45 (2d Cir. 1997).  Plaintiffs argue that this
> interpretation of the requirement is too narrow, and that
> they should have a right to all documents that provide
> information about a plan and its benefits.  We agree with
> our sister circuits that the latter interpretation would
> make hash of the statutory language, which on its face
> refers to a specific set of documents: those under which a
> plan is established or operated.  If it had meant to require
> production of all documents relevant to a plan, Congress
> could have said so.  This is not to say, of course, that
> companies have a permanent privilege against disclosing
> other documents.  It means only that the affirmative
> obligation to disclose materials under ERISA, punishable
> by penalties, extends only to a defined set of documents.

Id. at 758-59; see also Shaver v. Operating Eng'r. Local 428 Pension Trust Fund,

332 F.3d 1198, 1202 (9th. Cir. 2003) (holding that "other instruments" is limited to

class of objects set out in statute and which specifically precedes "other

instruments" language); Allinder v. Inter-City Prods. Corp., 152 F.3d 544, 549 (6th

Cir. 1998) (holding that "other instruments" does not include documents used in

day-to-day claims processing and that general words in a statute are to be

construed in a manner which limits them "to the same class of things enumerated by the preceding specific words").[11]

In the absence of Eleventh Circuit authority on this issue, the Court declines to rewrite Section 1132(c) to authorize statutory penalties against an administrator for failure to provide documents other than those identified in the statute itself.[12] Plaintiff's claim for penalties against LINA for failure to provide documents is therefore dismissed.[13]

## 2.   *ERISA Preemption*

---

[11]  This definition of "instrument" is consistent with the common legal definition of this term, which is "a written legal document that defines rights, duties, entitlements, or liabilities, such as a contract, will, promissory note, or share certificate." Blacks Law Dictionary 813 (8th ed. 2004).

[12]  This does not mean that an administrator's failure to provide "pertinent" or "relevant" documents under the regulations is without consequence.  As the First Circuit observed in Doe, an administrator's failure to provide such information may result in a determination that it did not accord the claimant a "full and fair review," and that its denial of the plaintiff's claim was therefore arbitrary and capricious.  Doe, 167 F.3d at 60 (noting also that the regulations can be independently enforced by the Secretary of Labor).

[13]  If Plaintiff alleges that documents have not been produced which, as Section 1132(c) has been interpreted in this Order, were required to be produced, he may move to amend the Complaint.

Plaintiff asserts state law claims of negligent misrepresentation, conversion, trespass, and punitive damages against LINA.  Plaintiff claims that, in addition to wrongly denying him benefits, LINA misrepresented to him that funds he received from SSA were required to be paid by Plaintiff to LINA and CIGNA.  (See Compl, at ¶ 354-356.)  Plaintiff claims that LINA and CIGNA intentionally misappropriated his funds when they collected an amount equal to the SSA payments he received.  (Id. at ¶ 362-67.)  In doing so, Plaintiff alleges that LINA and CIGNA unlawfully deprived him of his personal property.  (Compl., at ¶ 362-67, Am. Compl., at 382-86.)

Plaintiff argues that actions upon which his state law claims are based are not preempted because they are independent of a refusal to pay benefits under ERISA, the wrongful actions occurred "after, separate, and distinct from LINA denying [Plaintiff's] benefits," and the state law claims "do not seek benefits owed by LINA or the Plan."  (Pl. Opp. to LINA Mot. to Dismiss, at 14.)  LINA argues Plaintiff's state law claims are preempted by ERISA because they relate to Plaintiff's employee benefit plan.

ERISA sets forth a comprehensive federal scheme for the enforcement of employee benefit plans.  The policies underlying ERISA are undermined if plan

participants or beneficiaries are permitted to bypass the ERISA system and obtain

remedies under state law–remedies that were rejected by Congress in ERISA.

Sanson v. General Motors Corp., 966 F.2d 618, 622 (11th Cir. 1992).  "The

express preemptive language used by Congress in ERISA is broad in scope–all

State laws insofar as they . . . relate to any employee benefit plan are preempted by

ERISA."   Cefalu v. B.F. Goodrich Co., 871 F.2d 1290, 1293 (5th Cir. 1989)

(internal quotations omitted); see also Cotton v. Mass. Mut. Life Ins. Co., 402 F.3d

1267 (11th Cir. 2005) ("[D]efensive ERISA preemption . . . broadly supercedes

any and all State laws insofar as they *relate to* any ERISA plan.") (emphasis

original) (quotations omitted) (quoting 29 U.S.C. § 1144(a)).  Defensive

preemption provides an affirmative defense to certain state law allegations, and,

where applicable, requires dismissal of state law claims.  Ervast v. Flexible Prods.

Co., 346 F.3d 1007, 1012 n.6 (11th Cir. 2003).[14]

---

[14]  Plaintiff conflates the two distinct doctrines of complete preemption and
defensive preemption and unnecessarily devotes much of his Opposition to
discussing complete preemption, which is inapplicable here.  "Under the complete-
preemption doctrine, certain federal statutes are construed to have such
'extraordinary' preemptive force that state-law claims coming within the scope of
the federal statute are transformed, for jurisdictional purposes, into federal
claims–i.e., completely preempted."  Sullivan v. Am. Airlines, Inc., 424 F.3d 267,
272 (2d Cir. 2005); see also Cotton, 402 F.3d at 1281.  "[W]hen complete
preemption exists, there is no such thing as the state action, since the federal claim

"The term 'relate to' has been interpreted broadly to preempt certain state common law causes of action brought by employees." Garren v. John Hancock Mut. Life. Ins. Co., 114 F.3d 186, 187 (11th Cir. 1997). In Garren, the Court noted that "state laws . . . are preempted by ERISA when the claim involves the proper administration of the plan." Id. Courts have further elaborated that a state law relates to an employee benefit plan 'if it has a connection with or reference to such a plan.'" Franklin v. QHG of Gadsden, Inc., 127 F.3d 1024, 1028 (11th Cir. 1997) (citations omitted). "[A] party's state law claim 'relates to' an ERISA benefit plan

is treated as if it appears on the face of the complaint because it effectively displaces the state cause of action." Lontz v. Tharp, 413 F.3d 435, 441 (4th Cir. 2005) (internal citations omitted). "Since the complaint is then understood to state a federal question, the well-pleaded complaint rule is satisfied, thereby justifying removal under § 1441(b)." Id. Defensive preemption, by contrast, does not provide a district court with federal subject-matter jurisdiction: "[I]t is now settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." Caterpillar Inc. v. Williams, 482 U.S. 386, 393 (1987); see also Butero v. Royal Maccabees Life Ins. Co., 174 F.3d 1207, 1212 (11th Cir. 1999). Defensive preemption, which is alternately referred to as "ordinary preemption" in case law, "simply declares the primacy of federal law, regardless of the forum or the claim." Lontz, 413 F.3d at 440. "Many federal statutes -- far more than support complete preemption -- will support a defendant's argument that because federal law preempts state law, the defendant cannot be held liable under state law." Sullivan, 424 F.3d at 272-73. Defensive preemption is the applicable doctrine in this case.

for purposes of ERISA preemption whenever the alleged conduct at issue is intertwined with the refusal to pay benefits.  Where state law claims of fraud and misrepresentation are based upon the failure of a covered plan to pay benefits, the state law claims have a nexus with the ERISA plan and its benefits system." Id. (quotations and citations omitted).  "The proper focus is . . . on the relationship between the alleged conduct and the refusal to pay benefits." Garren, 114 F.3d at 188 (holding the allegation that the prepayment agreement required under an ERISA plan imposed obligations not contained in the plan's summary plan description involves the proper administration of the ERISA plan and dismissing the state law claim).

The Franklin case is instructive.  In Franklin, the plaintiff attempted to avoid ERISA preemption by characterizing her claim as one in which she alleged she had been fraudulently induced to enter employment with her new employer when she was promised continued 24-hour home nursing care for her husband.  Plaintiffs argued their state-law claims were not preempted because their "claims of fraud in the inducement do not sufficiently 'relate to' ERISA governed plans so as to come within the preemptive parameters of ERISA." Franklin, 127 F.3d at 1028.  That is, they did not allege a violation of, nor seek relief under, the ERISA plan.  The

plaintiffs claimed that all of the events which are the subject of the complaint

occurred prior to the commencement of Plaintiff's employment relationship and

thus were not ERISA claims.  Id. at 1027.  The Eleventh Circuit rejected plaintiff's

arguments.  It held that the "Supreme Court has given an expansive interpretation

to the term 'relate to.'  The court has held that a state law relates to an employee

benefit plan 'if it has a connection with or reference to such a plan.'"  Id. at 1028

(citations omitted).[15]

_____

[15] The Court in Franklin was considering whether the District Court properly
asserted jurisdiction over a removed case, which ordinarily involves the question
whether there is complete preemption under 29 U.S.C. § 1132(a).  Section 1132(a)
provides the exclusive cause of action for the recovery of benefits governed in an
ERISA plan.  Franklin, 127 F.3d at 1028.  Whether a state law claim is "related to"
an ERISA plan is relevant under ERISA's preemption provision. 29 U.S.C. §
1144(a) provides a preemption defense to state law claims which "relate to" an
ERISA plan.  The effect is to prohibit a plaintiff from subjecting ERISA plans to
various and differing state law causes of action requiring them instead to be
asserted, if at all, as claims under the ERISA statute.  ERISA's preemption
provision gives rise to what is known as "defensive preemption."  There is some
confusion in reconciling the complete and defensive preemption concepts.  Ervast,
346 F.3d at 1013 n.7.  In Cotton, this confusion was discussed.  The Cotton court
noted its decision in Franklin was not consistent with its opinion in Butero, which
set forth the analysis required to determine whether complete preemption existed
for federal jurisdiction purposes.  Cotton, 402 F.3d at 1288.  The Cotton court, in
evaluating the decision in Franklin, stated that the Franklin court correctly began
its analysis by addressing whether complete preemption provided federal
jurisdiction over the state claims at issue in Franklin.  Id.  The Court went on to say
the remainder of the Franklin Court's analysis pertained to whether the Franklin
plaintiff's claims were "related to" an employer benefits plan under ERISA's

23

The case of <u>Whitman v. Hawaiin Tug & Barge Corp.</u>, 27 F. Supp.2d 1225

(D. Hawaii 1998), is similar to the facts here and thus provides a helpful analysis.

In <u>Whitman</u>, a pension plan participant sued the plan administrator under ERISA

and state law, seeking to preclude the administrator from recovering overpayment

of his monthly retirement benefits.  The plaintiff had discussed with the defendants

his desire to retire early and was given a calculation of his monthly and annual

retirement income if he chose to retire early.  <u>Id.</u> at 1227.  Upon retiring, the

plaintiff chose to have his ERISA plan account distributed in a single lump sum,

rather than in an annuity.  <u>Id.</u>  After receiving his benefits, he rolled the entire sum

into an Individual Retirement Account.  For about six months, the plaintiff

received his monthly benefits as was promised to him.  Subsequently, the plaintiff

preemption provision.  This "related to" analysis is germane to whether defensive
preemption exists.  The <u>Cotton</u> court noted that defensive preemption is broader
than complete preemption, stating further that state law claims are not necessarily
completely preempted for jurisdiction purposes just because they are preempted
defensively.  This discussion in <u>Cotton</u>, and the distinction between complete and
defensive preemption, is most relevant where the Court is confronted with the
question of federal jurisdiction, such as in considering whether there is an absence
of complete preemption so as to require that a removed case be remanded.  The
case before this Court concerns whether Plaintiff's state law claim is defensively
preempted.  The Court's opinion in <u>Franklin</u> is relevant here because it provides
the Eleventh Circuit's view on how to apply the "related to" clause to determine if
defensive preemption of a state law claim bars the claim.  For that reason, <u>Franklin</u>
is helpful and persuasive.

was told that the defendant had erred in calculating his benefits, and that his benefits would be reduced to the correct amount.  Id.  He was also told that he had to repay the overpayments he had received.  Id. at 1228.  The plaintiff filed suit, alleging various state law claims, including breach of fiduciary duty and promissory estoppel, in addition to his ERISA claim.  Id. at 1229.  He claimed that if he had been informed of the correct amount of his monthly benefits, he would have planned his financial affairs differently and may not have retired when he did.  Id. at 1228.

In finding that the plaintiff's state law claims were preempted, the Whitman Court stated that "ERISA contains one of the broadest preemption clauses ever enacted by Congress."  Id. at 1229 (citing PM Group Life Ins. Co. v. Western Growers Assurance Tr., 953 F.2d 543, 545 (9th Cir. 1992)).  The court elaborated: "[e]ven claims brought under state law doctrines that do not explicitly refer to employee benefit plans are preempted when the claims *arise from the administration of such plans whether directly or indirectly*."  Id. (emphasis added).

Like in Whitman, Plaintiff's state law claims directly concern the handling of his claim for benefits, and the alleged wrongful conduct is "intertwined" therewith.  Plaintiff's state law claims concern LINA's attempted enforcement of a

plan provision which allows an offset to benefits for payments received by the beneficiary from the SSA.  LINA's actions arose from the administration of the plan and "relate to" the plan.  Interestingly, Plaintiff relies on an ERISA provision, § 1132(a)(1)(B), in addition to his asserted state law claims, to recover the overpayment.  In Count III of his Complaint, Plaintiff seeks to "recover misappropriated plan benefits pursuant to 29 U.S.C. § 1132(a)(1)(B)," which allows a civil action under ERISA "to recover benefits due to [a participant] under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).  Plaintiff's use of the ERISA statute to recover these overpayments underscores the interrelatedness between the handling of the Plan and the overpayment made to LINA under a limitation provision in the Plan.

Plaintiff's tort claims question the proper administration of the Plan and reference the Plan.  As LINA points out, Plaintiff alleges repeatedly in his Complaint that LINA acted in violation of the Plan and ERISA in collecting the overpayment.  Plaintiff makes allegations such as: LINA "inappropriately collected from [Plaintiff] $50,581.06 that is NOT owed under the language of the policy;" "pursuant to ERISA, [Plaintiff] did not owe LINA/CIGNA any of the monies

26

received from SSA;" and that "pursuant to the Plan, [Plaintiff] did no owe

LINA/CIGNA all of the monies he received from SSA."  (See Compl., at ¶ 240,

Am. Compl., at ¶¶ 375-76.)  The Plan provides for an offset for partial Social

Security benefits as other income, and Plaintiff essentially complains about

LINA's application of this plan provision.  Plaintiff's state law claims for

overpayment to LINA therefore "have a connection with or reference to" the plan

and are intertwined with LINA's refusal to pay Plaintiff benefits.  The state law

claims are based on LINA's request for and collection of funds to which it claimed

it was entitled under the Plan, and these events are sufficiently if not obviously

"related to" the refusal to pay benefits to trigger ERISA preemption.  Plaintiff's

state law claims are therefore preempted and are required to be dismissed.

C.    Defendant RSI's Motion to Dismiss

Plaintiff asserts claims for negligent misrepresentation and trespass against

Defendant RSI.  Plaintiff asserts that RSI acted as an agent for LINA and CIGNA

and conveyed false information that he owed money received from SSA when in

fact he did not owe the money.  (Am. Compl., at ¶¶ 373-76.)  Plaintiff further

alleges that RSI, along with LINA and CIGNA, deprived him of his personal

property unlawfully.  (Id. at ¶¶ 383-84.)  The Court has ruled that Plaintiff's state

law claims are preempted by ERISA, and Plaintiff's Complaint against RSI is thus

required to be dismissed.[16]

      D.    <u>Defendant CIGNA's Motion to Dismiss</u>

Plaintiff asserts the same claims against CIGNA as it does against

LINA–various claims under ERISA, a count for a penalty for failure to provide

documents under ERISA, and state law claims for negligent misrepresentation,

conversion, punitive damages, and trespass.  CIGNA moves to dismiss ERISA

Counts I, III, and IV, Count V for failure to provide documents, and all state law

claims against it.  (CIGNA Mot. to Dismiss, at 14-16.)

      *1.    Personal Jurisdiction over CIGNA*

CIGNA first argues that it should be dismissed from the action for lack of

personal jurisdiction.  (CIGNA Mot. to Dismiss, at 4.)  When analyzing a motion

---

[16] Plaintiff alleges that RSI was acting as an agent for LINA and CIGNA when it committed the state law torts against him.  This case therefore does not fall under the Eleventh Circuit's opinion in <u>Morstein v. National Ins. Serv.</u>, which held that claims against an independent insurance agent, not an ERISA entity, were not ERISA preempted.  93 F.3d 715, 722 (11th Cir. 1996); <u>see also</u> <u>Butero</u>, 174 F.3d at 1213 n.2 ("[W]e decline to hold that claims against an ERISA entity's employee escape . . . preemption."); <u>Jones v. LMR Int'l, Inc.</u>, 367 F. Supp.2d 1346, 1352 (M.D. Ala. 2005) ("[C]laims against an agent of an ERISA entity do not fall within the *Morstein* holding and are preempted.").  Furthermore, these state law claims "affect the relationship between the ERISA entity" and are also preempted on that basis.  <u>Garren</u>, 114 F.3d at 188.

to dismiss for lack of personal jurisdiction in a federal question case, the Court must consider two questions.  First, whether the applicable statute potentially confers jurisdiction over the defendant and second, whether the exercise of jurisdiction comports with due process.  Rep. of Panama v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 942 (11th Cir. 1997).

The first inquiry is straightforward.  ERISA provides for nationwide jurisdiction.  Pursuant to ERISA's enforcement statute, district courts of the United States have jurisdiction over civil actions under the ERISA subchapter and "process may be served in any other district where a defendant resides or may be found."  29 U.S.C. § 1132(e).  CIGNA does not contend that it was improperly served, and CIGNA's affidavit states that it is authorized to do business in Delaware, Pennsylvania, New York, Connecticut and the District of Columbia. Because CIGNA is a domestic corporation doing business in the United States, the first part of the personal jurisdiction inquiry is satisfied.

Second, the Court must determine whether the exercise of jurisdiction comports with due process.  When a federal statute provides the basis for jurisdiction, the constitutional limits of due process derive from the Fifth, rather than the Fourteenth, Amendment.  Rep. of Panama, 119 F.3d at 942.  "In order to

evaluate whether the Fifth Amendment requirements of fairness and reasonableness have been satisfied, courts should balance the burdens imposed on the individual defendant against the federal interest involved in the litigation." Id. at 946.  Courts must engage in this balancing, however, *only if a defendant has established that his liberty interests actually have been infringed*.  That is, "[o]nly when a defendant challenging jurisdiction has presented a compelling case that would render jurisdiction unreasonable, should courts weigh the federal interests favoring the exercise of jurisdiction." Id. (citations and quotations omitted).

Although courts should consider the factors for determining fairness under the Fourteenth Amendment when evaluating whether the defendant has met his burden of establishing constitutionally significant inconvenience, the factors are not applied "mechanically" because the due process concerns of the Fifth and Fourteenth Amendments are not identical. Id.  "A court must therefore examine a defendant's aggregate contacts with the nation as a whole rather than his contacts with the forum state in conducting the Fifth Amendment analysis." Id. at 946-47. While the Eleventh Circuit has noted that there are rare circumstances in which "a defendant may have sufficient contacts with the United States as a whole but still will be unduly burdened by the assertion of jurisdiction in a faraway and

inconvenient forum," "it is only in highly unusual cases that inconvenience will rise to a level of constitutional concern." Id. at 947.  The Eleventh Circuit has held, therefore, that the burden is on the defendant to show that jurisdiction will "make litigation so gravely difficult and inconvenient that [he] unfairly is at a severe disadvantage in comparison to his opponent." Id.  CIGNA has made no such showing here, and the Court finds that no severe inconvenience or constitutionally undue burden will arise from CIGNA being required to litigate in this forum.  CIGNA has admitted its contacts with five states in the Northeast, therefore it has sufficient contacts with the United States.  The exercise of jurisdiction over CIGNA here comports with due process.

2.  *Validity of ERISA Claims Against CIGNA*

CIGNA also argues in its motion to dismiss that it is not the proper party to Plaintiff's ERISA claims under 29 U.S.C. § 1132(a)(1)(B) and moves the Court to dismiss Plaintiff's Counts I, III, and IV.[17]  (CIGNA Mot. to Dismiss, at 14.)  Both

---

[17]  Although CIGNA does not move to dismiss Count II, which seeks to recover benefits due under the terms of ADC's other employee benefit plans pursuant to the same ERISA provision, Plaintiff responds to CIGNA's Motion to Dismiss as if CIGNA had moved to dismiss Counts I, II, and IV.  (Pl. Opp. to CIGNA Mot. to Dismiss, at 10) ("Although CIGNA asks this Court to dismiss Plaintiff's Counts I, II, & IV, these Counts state valid claims against CIGNA.").  Furthermore, CIGNA fails to correct Plaintiff's apparent error in its Reply brief.  A careful reading of Count II leads to the conclusion that, although it is not clearly

parties acknowledge that "[t]he proper party defendant in an action concerning

ERISA benefits is the party that controls administration of the plan." Garren, 114

F.3d 187. "An order enjoining the payment of benefits from an ERISA plan must

issue against a party capable of providing the relief requested." Hunt v. Hawthorne

Associates, Inc., 119 F.3d 888, 908 (11th Cir. 1997). This Court has held that

unless an entity has the *authority* under the plan to make payment, it cannot

implement the relief sought under ERISA and is not a proper defendant. Brucks,

391 F. Supp. 2d at 1212.

Plaintiff's Complaint states that "LINA is the insuring entity responsible for

the payment of benefits under the ADC LTD Plan." (Compl., at ¶ 5.) The benefits

Plaintiff seeks are made available by a group insurance policy issued by LINA, and

---

drafted, it seeks relief only from Defendant ADC. Count II alleges that Defendant
ADC terminated certain of Plaintiff's other employee benefits based on the
incorrect determination of LINA and CIGNA that Plaintiff was not disabled.
Plaintiff states "ADC, the Plan Administrator, should be ordered to retroactively
reinstate [Plaintiff's] status as a 'Disabled' employee under the LTD Plan and
[Plaintiff's] entitlement to any employee benefits that were affected by the
termination of [Plaintiff's] LTD benefits." (Compl., at ¶ 314.) The Court reads
Count II as only stating a claim against Defendant ADC, and Plaintiff voluntarily
dismissed ADC on November 4, 2005. Count II, therefore, has been dismissed by
Plaintiff. Even if Count II could be read as stating a claim against CIGNA,
CIGNA is not a proper party to an action concerning the ERISA benefits sought in
Count II.

therefore if benefits are determined to be payable, they are payable from LINA's resources, not CIGNA's.  Plaintiff argues that he "indisputably states" in the Complaint that CIGNA controlled the administration of the plan.  But the actual language of the Complaint alleges "CIGNA acted in concert with LINA and Intracorp in the handling and termination of Mr. Ferree's disability claim."  (Pl. Opp. to CIGNA Mot. to Dismiss, at 11; Compl., at ¶¶ 6, 299-307.)  These allegations merely state that CIGNA participated in the handling and subsequent denial of Plaintiff's claim.  Plaintiff does not assert that CIGNA *controlled* the administration of the plan as required by the law of this Circuit.

Plaintiff also argues that he has sufficiently alleged that CIGNA has the resources to pay a claim, and therefore it is capable of providing the relief requested.  (Pl. Opp. to CIGNA Mot. to Dismiss, at 11-12.)  Plaintiff confuses the meaning of the <u>Hunt</u> line of cases–unless an entity has the *authority* under the plan to make payment, it cannot implement the relief sought under ERISA.  Plaintiff does not allege and the pleadings do not indicate that CIGNA has the authority to make payment to Plaintiff under the Plan.  It is irrelevant that it has sufficient resources to cover the payment requested.  CIGNA is not the proper defendant for an action concerning ERISA benefits, and Counts I, III, and IV against CIGNA are

required to be dismissed.  Because this Court has held that Plaintiff's claim for an administrative penalty under ERISA does not state a claim for which relief may be granted, Count V and Count VI for attorneys' fees against CIGNA also should be dismissed.

 *3. State law claims against CIGNA*

 CIGNA also moves to dismiss state law claims for negligent misrepresentation, conversion, punitive damages, and trespass on the basis that they are preempted by ERISA.  This Court has held that Plaintiff's state law claims are preempted.  All state law claims against CIGNA are therefore subject to dismissal.

**III. CONCLUSION**

 For the foregoing reasons,

 **IT IS HEREBY ORDERED** that Defendant LINA's Motion to Partially Dismiss Plaintiff's Complaint [19] is **GRANTED**, LINA's Motion to Dismiss Amended Complaint [39] is **GRANTED**, Defendant RSI's Motion to Dismiss

Amended Complaint [40] is **GRANTED**, and Defendant CIGNA's Motion to

Dismiss [41] is **GRANTED**.

   **SO ORDERED** this 17th day of July, 2006.


_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE